# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| DEVON M. KYLE, | ) | |
| *Plaintiff*, | ) ) ) | Case No. 3:25-cv-542 |
| v. | ) ) | Judge Atchley |
| MATTHEW WINN, ALISON ANGEL, MICHAEL PODERY, BRETT COBBLE, and FRANK STRADA, | ) ) ) ) | Magistrate Judge Poplin |
| *Defendants.* | ) ) ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Devon M. Kyle, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") currently housed at the Bledsoe County Correctional Complex ("BCCX"), filed a (1) pro se complaint under 42 U.S.C. § 1983 [Doc. 2] and (2) motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court will **GRANT** Plaintiff's motion, permit Plaintiff's retaliation claim to **PROCEED** against Defendant Matthew Winn in his individual capacity and **DISMISS** all remaining claims and Defendants.

## I. MOTION TO PROCEED *IN FORMA PAUPERIS*

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's motion [Doc. 1] demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [*Id.*] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market

Street, Suite 130, Knoxville, Tennessee, 37902 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with payment of the filing fee.

## II. COMPLAINT SCREENING

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might

2

later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

B. **Plaintiff's Allegations**

While incarcerated, Plaintiff, who had been addicted to K-2, cocaine, and Hennessy, voluntarily entered the Second Chance Protective Custody Therapeutic Community Drug and Alcohol Program [Doc. 2 p. 10]. As part of this program, Plaintiff received individual and group therapy, cognitive-behavioral interventions, and drug/alcohol relapse prevention [*Id.*]. He did well in the program, and he was able to restore relationships that were damaged during his addiction [*Id.*]. After this healing, Plaintiff had "no desire to do drugs and alcohol ever again. Plaintiff felt life was worth living" [*Id.* at 10–11].

At BCCX, Plaintiff shared a cell with Maleake Tatham [*Id.* at 11]. On May 28, 2025, their cell was searched by Corrections Officer ("CO") Richard Farley, and a white powder substance was found inside [*Id.*]. CO Farley called Sgt. Wiliam Byrd to come to the cell to retrieve the substance [*Id.*].

On June 3, 2025, Sgt. Byrd delivered a "write up" to both Plaintiff and Tatham [*Id.*]. Sgt. Byrd was identified as the reporting official in this write up, and he told Plaintiff to call him as a witness at his disciplinary hearing [*Id.* at 12].

On June 4, 2025, Sgt. Matthew Winn came to Plaintiff's unit and asked whether he had any witnesses [*Id.*]. Plaintiff replied affirmatively and requested Sgt. Byrd [*Id.*]. Plaintiff was provided a witness form, which Sgt. Winn filled out with Plaintiff's name and potential testimony [*Id.*]. Later, Sgt. Winn came back to the unit and served Plaintiff and Tatham with an amended

write up [*Id.* at 13]. Sgt. Winn informed Plaintiff, without explanation, that no witnesses would be called for testimony [*Id.*].

The next day, June 5, 2025, Sgt. Winn informed Plaintiff that Tatham had pleaded guilty [*Id.*]. Sgt. Winn stated, "If you don[']t plea out and take my offer, you will wish you had. If you waste my time and everyone else's by taking this to a hearing or file an appeal, I will personally see to it that you [will] be found guilty. Your parole [will be] denied in November, [you will be] kicked out of the program, [you will lose] 4 months . . . of good time credits, you will stay in prison a[]lot longer[,] and on top of what I impose for your disciplinary punishment!! 30 days punitive segregation in the hole, 3 months visits restriction[,] and you'll do [an] extra 6 months in the hole!!" [*Id.* at 13–14]. In response, Plaintiff told Sgt. Winn that he had a right to both a hearing and an appeal, and that Sgt. Winn was violating TDOC policy by retaliating against him for exercising his rights [*Id.* at 14]. Plaintiff also informed Sgt. Winn that the charges against him should be dismissed since Tatham pleaded guilty [*Id.*]. But Sgt. Winn told Plaintiff he had no rights at BCCX, that Plaintiff was also guilty of the disciplinary infraction, and that he would see him at the hearing the following day [*Id.* at 15].

On June 6, 2025, Plaintiff was called before the Class A Disciplinary Board [*Id.*]. The Board consisted of the Chairperson, Sgt. Winn; the Warden's secretary, Alison Angel; and Michael Podery [*Id.* at 5–6, 15]. Sgt. Winn asked Plaintiff if there was anything he wished to say in his defense, and Plaintiff explained that he had requested Sgt. Byrd as a witness [*Id.* at 15–16]. He also informed the Board that they were violating TDOC policy and his due process rights [*Id.*]. Sgt. Winn asked Plaintiff to step out of the office [*Id.* at 16].

The Board found Plaintiff guilty and imposed a disciplinary punishment of 30 days of punitive segregation, a 3-month restriction on visitation privileges, 4 months of Prisoner Sentence

4

Reduction Credits ("PSRC"), and a $5.00 fine[1] [Doc. 2-1 p. 12]. In addition, because of Sgt. Winn's "retaliatory motives," Plaintiff spent an additional 5 months in segregation, was denied parole, and removed from his federally funded drug and alcohol program [*Id.* at 20–21].

Internal Affairs ("IA") Investigator Jason Dykes falsified the writeup by claiming he was the reporting official, even though CO Farley found the contraband [*Id*. at 16].

On June 10, 2025, Plaintiff informed Warden Brett Cobble about the TDOC and due process violations associated with his disciplinary hearing, Sgt. Winn's retaliatory threats, and his cellmate's guilty plea [*Id.* at 17]. Warden Cobble told Plaintiff to file an appeal [*Id.*]. Warden Cobble then spoke with Tatham [*Id*. at 17–18]. And on June 22, 2025, Warden Cobble denied Plaintiff's appeal [*Id.*].

TDOC Commissioner Frank Strada denied Plaintiff's subsequent appeal [*Id.*]. Commissioner Strada has essentially implemented a rule that prisoners are presumed guilty until proven innocent, which violates TDOC policy [*Id.*].

Aggrieved, Plaintiff filed this action against Matthew Winn, Alison Angel, Michael Podery, Brett Cobble, and Frank Strada, alleging retaliation by Defendant Winn [*Id.* at 19–21, 23–24]; due process violations by Defendants Winn, Angel, and Podery [*Id.* at 22]; and Eighth Amendment violations by Defendants Cobble and Strada [*Id.* at 23]. Plaintiff seeks a variety of declaratory, injunctive, and monetary relief [*Id*. at 25–27].

### C. Analysis

To state a claim against any Defendant for relief under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges,

---

[1] This finding is reflected in Plaintiff's attached disciplinary records, which are considered part of his complaint. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings[.]" (citing Fed. R. Civ. P. 10(c))).

5

or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Here, Plaintiff sues each Defendant in both their official and individual capacities [Doc. 2 p. 5–7].

### 1. Official-Capacity Claims

Defendants are all TDOC employees. Suit against TDOC employees in their official capacities is the equivalent of suit against TDOC itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). And because the TDOC is an arm of the State of Tennessee, suit against a TDOC employee in his official capacity is suit against the State. *See Hix*, 196 F. App'x at 355 (holding TDOC is equivalent of the "State"). However, Plaintiff cannot sustain a § 1983 action against the State of Tennessee, because "a state is not a person within the meaning of §1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

Also, the Eleventh Amendment typically "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984)). Because there has not been congressional abrogation or waiver of immunity, Plaintiff's claims against Defendants in their official capacities are otherwise barred by the Eleventh Amendment. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 345 (1979) (finding § 1983 does not waive state sovereign immunity); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (holding Tennessee has not waived immunity to suit under § 1983). Thus, Plaintiff's suit against Defendants in their official capacities is impermissible and will be dismissed.[2]

---

[2] An exception to sovereign immunity, known as the *Ex Parte Young* exception, exists when a State official is sued in his or her official capacity for prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123, 155–56 (1908);

6

## 2. Individual-Capacity Claims

To state a claim against a defendant in his personal capacity, a plaintiff must adequately plead that the particular defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This requirement exists because constitutional liability cannot attach to a defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor").

### i) Eighth Amendment

Plaintiff alleges that Defendants Warden Cobble and Commissioner Strada violated the Eighth Amendment's prohibition against cruel and unusual punishment by improperly implementing TDOC policies in a manner that presumes an inmate is guilty of a disciplinary offense before the matter is heard [*See* Doc. 2 p. 23]. However, a prisoner has no right to the presumption of innocence in a prison disciplinary hearing. *See, e.g., Crafton v. Luttrell*, 378 F. Supp. 521, 539 (M.D. Tenn. 1973) ("[T]he disciplinary hearing need not contain certain procedural safeguards, such as presumption of innocence and proof of guilt beyond a reasonable doubt, which are applicable in normal criminal prosecutions."). And disciplinary hearings are not otherwise "to

---

*Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). But where the complaint is "based entirely on past acts and not continuing conduct that, if stopped, would provide a remedy to [Plaintiff] . . . it . . . does not come under the doctrine of *Ex Parte Young*." *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003). Here, Plaintiff seeks injunctive relief as a retroactive measure for past alleged harms, and therefore, his claims do not come within the *Ex Parte Young* exception.

be measured by the requirements of a criminal prosecution, for the full panoply of procedural due process rights do not apply to the administration of prison discipline." *Brooks v. Westbrooks*, No. 3:17-CV-00686, 2017 WL 3868275, at *3 (M.D. Tenn. Sept. 5, 2017) (quoting *Crafton*, 378 F. Supp. at 526 (M.D. Tenn. 1973) (citations omitted)). Therefore, Plaintiff has not alleged a plausible Eighth Amendment claim, and this claim will be dismissed.

### ii) Due Process

To state a due process violation, Plaintiff must demonstrate that he was deprived of an interest protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). Plaintiff's complaint, liberally construed, alleges that that Defendants violated his due process rights by (1) failing to follow TDOC policies; (2) falsely finding him guilty of a disciplinary offense; and (3) refusing to permit him witnesses at his disciplinary hearing [*See, generally*, Doc. 2]. The Court considers each of these allegations in turn.

First, the Court finds that Defendants' alleged failure to follow TDOC policies does not give rise to a constitutional claim, as TDOC policy and procedures do not create constitutionally protected interests. *See McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (holding failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest); *see also Stanley v. Vining*, 602 F. 3d 767, 769 (6th Cir. 2010) ("It has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983."). Accordingly, this allegation does not state a claim.

8

Case 3:25-cv-00542-CEA-DCP    Document 5    Filed 11/12/25    Page 8 of 13    PageID #: 70

Next, Plaintiff complains that he should not have been convicted of a disciplinary offense, because the contraband found in his cell belonged to his cellmate, who pleaded guilty. However, inmates possess no right to be free from charges or convictions of prison disciplinary offenses. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974). This is so even if the charge turns out to be unfounded. *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."). Therefore, this allegation does not state a due process claim.

Finally, the Court considers the lynchpin of Plaintiff's due process argument, which is that Defendants Winn, Angel, and Podery denied him "a fair and impartial disciplinary proceeding by refusing to call" Plaintiff's witness and the reporting official [Doc. 2 p. 22]. As the Court noted above, "[p]rison disciplinary proceedings are not a part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. But the loss of good-times credit because of a disciplinary conviction (as occurred in this case) will typically implicate a liberty interest and require certain due process protections. *Id.* at 558. One of these requirements is that the inmate possesses the right to call witnesses when doing so "would not be unduly hazardous to institutional safety or correctional goals." *Id*. at 566-67.

However, because Plaintiff seeks monetary damages as a result of his disciplinary conviction, he must first prove that his disciplinary conviction has been reversed or otherwise invalidated before he can maintain a § 1983 action. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (holding plaintiff must demonstrate unlawfulness of his conviction or confinement prior

9

to pursuing § 1983 claim challenging criminal judgment); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck* to disciplinary proceedings that resulted in deprivation of good-time credits). And, to the extent Plaintiff seeks to overturn his disciplinary conviction and restore his good-time credits, he is challenging the duration of his confinement, which must be pursued through a writ of habeas corpus. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Summarizing these principles, the Supreme Court has explained:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). Here, success on Plaintiff's § 1983 due process claim would render his disciplinary conviction invalid. And Plaintiff has not demonstrated that the disciplinary conviction resulting in the loss of good-time credits has been invalidated. Accordingly, this allegation fails to state a cognizable due process claim.

In sum, all of Plaintiff's due process claims fail to state a claim upon which relief may be granted under § 1983, and they will be dismissed.

### iii) Retaliation

Finally, Plaintiff alleges that Defendant Winn retaliated against him for exercising his right to a disciplinary hearing and pursing the appeals process [Doc. 2 p. 19–21, 23–24]. A retaliation claim requires a plaintiff to show three things: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that

10

is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Regarding the consequences Plaintiff faced as a result of his disciplinary conviction, the Court finds that, just as with Plaintiff's due process claim, success on a retaliation claim necessarily implies the invalidity of the Board's decision that Plaintiff was, in fact, guilty. And the Sixth Circuit has held that prisoners cannot collaterally attack their disciplinary hearings or convictions by alleging retaliation in a § 1983 action. *See, e.g., McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) ("A prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction."); *Lewis v. Pendell*, 90 F. App'x 882, 883 (6th Cir. 2004) (holding that a § 1983 claim was not cognizable because a favorable ruling on the plaintiff's retaliation claim would imply the invalidity of his disciplinary conviction); *Norwood v. Mich. Dep't of Corr.*, 67 F. App'x 286, 288 (6th Cir. 2003) ("Norwood cannot evade *Heck*'s bar on § 1983 challenges . . . by labeling his cause of action a retaliation claim.").

However, Plaintiff also claims that due to "Defendant Winn's retaliatory motives, the Plaintiff was placed in segregation an additional 5 months, [his] parole [was] denied[,] and [he was] removed" from the drug and alcohol program [*Id*. at 20–21]. As the Court understands Plaintiffs' complaint, these restrictions were not part of Plaintiff's punishment for his disciplinary conviction [*See* Doc. 2-1 p. 12]. Thus, the Court presumes at this stage of the litigation that *Heck* would not bar Plaintiff's challenge. And, according to Plaintiff, Defendant Winn threatened these actions—and Plaintiff subsequently suffered these consequences—because Plaintiff exercised his right to a disciplinary hearing rather than pleading guilty to the write up [*Id.* at 19]. The Court presumes that (1) Plaintiff engaged in protected conduct by maintaining his innocence at his

11

disciplinary hearing, and (2) Plaintiff's placement in segregation, denial of parole, and removal from the drug and alcohol program were sufficiently adverse actions. *See Muhammed v. Byron Ponds*, No. 3:20-CV-00602, 2020 WL 7231625, at *4 (M.D. Tenn. Dec. 8, 2020) (finding prisoner engaged in protected conduct by maintaining innocence at disciplinary hearing and suffered adverse action through more restrictions in close custody). And Plaintiff has plausibly alleged a connection between the two elements, as he alleges that Defendant Winn explicitly threatened these consequences if Plaintiff continued to a disciplinary hearing. Accordingly, the Court will permit a retaliation claim to proceed against Defendant Winn in his individual capacity.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Plaintiff's retaliation claim will **PROCEED** against Defendant Matthew Winn in his individual capacity;

6. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Winn;

7. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this Order;

8. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

9. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packet, this action will be dismissed;

10. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against him;

11. All other claims and Defendants are **DISMISSED**; and

12. Plaintiff is **ORDERED** to immediately inform the Court and Defendant or his counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**